UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 20-cv-23020-BLOOM/Louis

CLAUDIA PLAZAS ROCHA,

   Plaintiff,

v.

TELEMUNDO NETWORK GROUP LLC,

   Defendant.
_____/

**ORDER**

**THIS CAUSE** is before the Court upon Defendant Telemundo Network Group, LLC's ("Defendant") Motion to Compel Arbitration and Dismiss or, in the Alternative, Stay Proceedings Pending Arbitration. ECF No. [6] ("Motion"). Plaintiff Claudia Plaza Rocha ("Plaintiff") filed a response to the Motion, ECF No. [20] ("Response"), to which Defendant replied, ECF No. [21] ("Reply"). The Court has carefully reviewed the Motion, all opposing and supporting submissions, the record in this case, the applicable law, and is otherwise fully advised. For the reasons set forth below, the Motion is granted.

**I. BACKGROUND**

On April 8, 2020, Plaintiff initiated this employment discrimination action against Defendant in the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County, Florida. ECF No. [1-2] ("Complaint"). On July 22, 2020, Defendant removed this action to federal court on the basis of federal question jurisdiction. ECF No. [1] ("Notice").

In her Complaint, Plaintiff asserts the following nine counts: (1) Discrimination in Compensation under Equal Pay Act, 29 U.S.C. § 206, *et seq.*, (Equal Pay Act) (2) Sex

Discrimination in Violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"), (3) Sex Discrimination in Violation of the Florida Civil Rights of 1992, Fla. Stat. § 760, *et seq.* ("FCRA"), (4) Race Discrimination in Violation of the FCRA, (5) Discrimination Based on Race in Violation of Title VII, (6) National Origin Discrimination in Violation of the FCRA, (7) Discrimination Based on National Origin in Violation of Title VII, (8) Retaliation in Violation of the FCRA, and (9) Retaliation in Violation of the Equal Pay Act. *See* ECF No. [1-2].

On July 29, 2020, Defendant filed the instant Motion seeking an order compelling arbitration and dismissing or staying judicial proceedings. Defendant contends that Plaintiff voluntarily entered into an employment agreement, ECF No. [6-4], that was contingent on her agreement to be bound by an arbitration program, ECF No. [6-7] ("Solutions Agreement" or "Agreement"), which is evident from Plaintiff's offer acceptance form, ECF No. [6-8] at 2. Plaintiff responds that the Solutions Agreement is not valid because the electronic agreement does not contain Plaintiff's electronic signature, and that she did not review and accept the Solutions Agreement. Plaintiff also claims that the Solutions Agreement is unconscionable and that, if this Court grants the Motion, a stay, as opposed to a dismissal, is the appropriate remedy. *See* ECF No. [20]. Defendant replies that all the claims in this suit fall under the Solutions Agreement and that the enforceability of the Agreement should be decided by the arbitrator. *See* ECF No. [6] at 7.

## II. LEGAL STANDARD

The presence of a valid arbitration agreement raises a strong presumption in favor of enforcement. *See Mitsubishi Motors Corp. v. Soler Chrysler-Plymoth, Inc.,* 473 U.S. 614, 630-31 (1985). Under the Federal Arbitration Act ("FAA"), a written agreement to arbitrate is "valid, irrevocable, and enforceable, save upon grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C § 2. The FAA "embodies a 'liberal federal policy favoring arbitration

agreements." *Hemispherx Biopharma, Inc. v. Johannesburg Consol. Invs.*, 553 F.3d 1351, 1366 (11th Cir. 2008) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)). Similarly, the FAA provides that an agreement to arbitrate is valid and enforceable unless there is a reason in law or equity to invalidate the contract, and Florida courts have found that Florida law and public policy strongly favor arbitration. Fla. Stat. § 682.02; *see Careplus Health Plans, Inc. v. Interamerican Med. Ctr. Grp., LLC*, 124 So. 3d 968, 971 (Fla. 4th DCA 2013) (citing *Seifert v. U.S. Home Corp.*, 750 So. 2d 633, 636 (Fla. 1999)). Thus, courts are encouraged to resolve any doubts in favor of arbitration. *Id.* Despite courts' proclivity for enforcing arbitration agreements, a party will not be required to arbitrate where it has not agreed to do so. *See Nat'l Auto Lenders, Inc. v. SysLOCATE, Inc.*, 686 F. Supp. 2d 1318, 1322 (S.D. Fla. 2010) (citing *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960)), *aff'd*, 433 F. App'x 842 (11th Cir. 2011).

When faced with a facially valid arbitration agreement, the burden is on the party opposing arbitration to demonstrate that the agreement is invalid or that the issue raised is otherwise not arbitrable. *See Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 92 (2000) ("[T]he party seeking to avoid arbitration bears the burden of establishing that Congress intended to preclude arbitration of the statutory claims at issue."). Additionally, arbitration "provisions will be upheld as valid unless defeated by fraud, duress, unconscionability, or another 'generally applicable contract defense.'" *Parnell v. CashCall, Inc.*, 804 F.3d 1142, 1146 (11th Cir. 2015) (quoting *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006)).

### III. DISCUSSION

Defendant claims that the Solutions Agreement is valid because Plaintiff's employment was expressly contingent on her acceptance of the Solutions Agreement. As such, Defendant

claims that the Court should compel arbitration and either dismiss or stay the case pending arbitration. Plaintiff contends that she never signed the document, never reviewed the Solutions Agreement, and that the Court should stay rather than dismiss this case if it grants the instant Motion.

### A. Existence of an Arbitration Agreement

In addressing a motion to compel arbitration, the Court must first determine whether there exists a valid agreement to arbitrate. *Mitsubishi Motors Corp.*, 473 U.S. at 626. This requires two separate determinations: (1) whether an agreement exists between the parties; and (2) whether the agreement is valid or whether there is a reason at law or equity to revoke the contract. *Wiles v. Palm Springs Grill, LLC*, No. 15-cv-81597, 2016 WL 4248315, at *1 (S.D. Fla. Aug. 11, 2016) (quoting 9 U.S.C. § 2); *see also Rent-A-Ctr., W., Inc v. Jackson*, 561 U.S. 63,70-71 (2010) (explaining that challenges to the validity of the arbitration agreement, as opposed to challenges to the validity of the "contract as a whole," are generally for the court to decide). As such, the Court must first determine whether an arbitration agreement exists in this case. *See Wiand v. Schneiderman*, 778 F.3d 917, 924 (11th Cir. 2015) ("Challenges to the validity of the contract as a whole are for the arbitrator to decide, whereas challenges to the validity of the arbitration clause in particular or to the very existence of the contract must be resolved by the court before deciding a motion to compel arbitration." (citing *Buckeye Check Cashing, Inc.*, 546 U.S. at 444-45 n.1)).

Additionally, where the parties dispute whether an agreement to arbitrate exists at all, the Court must begin by making a threshold determination as to whether a contract has been formed before assessing any delegation clause. *See Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 530 (2019) ("To be sure, before referring a dispute to an arbitrator, the court determines whether a valid arbitration agreement exists." (citation omitted)); *Compere v. Nusret Miami, LLC*,

396 F. Supp. 3d 1194, 1200 (S.D. Fla. 2019); *Seminole Cty. Tax Collector v. Domo, Inc.,* No. 6:18-cv-1933-Orl-40DCI, 2019 WL 1901019, at *9 (M.D. Fla. Feb. 13, 2019) ("Having found that a valid agreement to arbitrate exists between the parties, the Court now considers the application of the delegation provision within the arbitration clause."), *report and recommendation adopted*, No. 6:18-cv-1933-Orl-40-DCI, 2019 WL 1772108 (M.D. Fla. Apr. 23, 2019).

Furthermore, the party asserting the existence of a contract containing an arbitration agreement "must prove its existence by a preponderance of the evidence." *St. Joe Corp. v. McIver*, 875 So. 2d 375, 381 (Fla. 2008). The determination of whether an arbitration agreement exists is a "matter of contract." *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 943 (1995). The Court of Appeals for the Eleventh Circuit has held that a "summary judgment-like standard is appropriate and that a district court may conclude as a matter of law that parties did or did not enter into an arbitration agreement" only if there is not a genuine dispute of material fact concerning the formation of the agreement. *Bazemore*, 827 F.3d at 1333. Additionally, a dispute that is neither supported by evidence nor created by evidence but is just "merely colorable" or "not significantly probative" is not "genuine." *Id.*; *see also Valencia v. 1300 Ocean Drive, LLC*, No. 17-20669-CIV, 2017 WL 7733158, at *2 (S.D. Fla. Dec. 4, 2017) ("A mere scintilla of evidence supporting the opposing party's position will not suffice to defeat a finding that an arbitration agreement was formed. There must be enough of a showing that the jury could reasonably find for that party.").

"Under Florida law, the party seeking to enforce arbitration has the burden of proving 'offer, acceptance, consideration and sufficient specification of essential terms . . . by a preponderance of the evidence.'" *Hudson v. P.I.P., Inc.*, No. 18-61877-CIV, 2020 WL 5647009, at *6 (S.D. Fla. Mar. 13, 2020) (quoting *Schoendorf v. Toyota of Orlando*, No. 6:08-cv-767-Orl-19DAB, 2009 WL 1075991, at *6 (M.D. Fla. Apr. 21, 2009)), *report and recommendation*

*adopted*, No. 18-61877-CIV, 2020 WL 5647051 (S.D. Fla. Apr. 2, 2020). Moreover, a "meeting of the minds of the parties on all essential elements is a prerequisite to the existence of an enforceable contract." *De Beers Centenary AG v. Hasson*, 751 F. Supp. 2d 1297, 1302 (S.D. Fla. 2010) (quoting *Bus. Specialists, Inc. v. Land & Sea Petroleum, Inc.*, 25 So. 3d 693, 695 (Fla. 4th DCA 2010)).[1] "A valid contract—premised on the parties' requisite willingness to contract—may be 'manifested through written or spoken words or inferred in whole or in part from the parties' conduct." *Kolodziej v. Mason*, 774 F.3d 736, 741 (11th Cir. 2014) (citing *L&H Constr. Co. v. Circle Redmont, Inc.*, 55 So. 3d 630, 634 (Fla. 5th DCA 2011)).

Defendant contends that there is a valid agreement to arbitrate because Plaintiff's employment was expressly contingent on accepting the Solutions Agreement, and the claims raised in this action are within the scope of the Agreement. ECF No. [6-4]. Moreover, Defendant notes that Plaintiff signed an acknowledgement form that explicitly stated that she received, reviewed, and agreed to the Solutions Agreement. ECF No. [6-8]. In support of its assertion that Plaintiff entered into a valid agreement to arbitrate, Defendant submits the Declaration of Javad Din, ECF No. [6-1] ("Din Declaration"), along with numerous corresponding exhibits, ECF Nos. [6-2] – [6-8]. The Din Declaration explains that every applicant must create a profile on a platform called Kenexa BrassRing, which Plaintiff did in order to submit an application for employment with Defendant. ECF No. [6-1] ¶¶ 5-7. On May 24, 2019, Defendant sent Plaintiff an e-mail offer of

---

[1] "[W]hile the FAA requires that the arbitration agreement be in writing, it does not require that it be signed by the parties." *Sundial Partners, Inc. v. Atl. Street Capital Mgmt. LLC*, No. 8:15-cv-861-T-23JSS, 2016 WL 943981, at *5 (M.D. Fla. Jan. 8, 2016) (citing 9 U.S.C. § 2; *Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1368 (11th Cir. 2005)). Furthermore, Florida law does not require an arbitration agreement to contain a signature and, "a contract may be binding on a party even in the absence of that party's signature if the parties assented to the contract in another manner." *Lawhon v. Aaron's, Inc.*, No. 8:19-cv-2333-T-36JSS, 2020 WL 2219665, at *8 (M.D. Fla. May 7, 2020) (citing *Sundial Partners, Inc.*, 2016 WL 943981, at *5); *see also Prime Ins. Syndicate, Inc. v. B.J. Handley Trucking, Inc.*, 363 F.3d 1089, 1092 (11th Cir. 2004) ("The last act necessary to complete a contract is the offeree's communication of acceptance to the offeror.").

employment, ECF No. [6-3] ("E-mail Offer"), that attached an offer letter of employment, ECF No. [6-4] ("Offer Letter"), which explicitly stated that the offer of employment was contingent upon Plaintiff's agreement to be bound by the Solutions Agreement. ECF No. [6-1] ¶¶ 8-9. The E-mail Offer contained a personalized link to the electronic offer acceptance form and a link to Defendant's New Hire Website, and instructed Plaintiff to review the various policies available on the website, including the Solutions Agreement, and accept each of the policies electronically by entering her name and her unique personal identification number. *Id.* ¶¶ 10-15. Plaintiff electronically signed the offer acceptance form on May 24, 2019, which included an express acknowledgement that Plaintiff received, reviewed, and agreed to the Solutions Agreement. ECF No. [6-8]. Further, on May 25, 2019, Plaintiff responded to the E-mail Offer, stating in part that "I am writing to let you know that I have completed all the forms indicated in the email." ECF No. [6-3]. On June 17, 2019, after executing all the required forms and policies that were conditions of her offer of employment, Plaintiff began her employment with Defendant. ECF No. [6-1] ¶ 19. Based on this documentation, Defendant argues that Plaintiff clearly entered into a valid arbitration agreement and accepted the terms of the Solutions Agreement as a condition of beginning her employment with Defendant.

Plaintiff, however, argues that the Solutions Agreement is invalid because she did not sign or review the Solutions Agreement prior to commencing her employment with Defendant. Plaintiff cursorily notes that the Agreement is unconscionable, but she presents no argument or explanation as to how or why the Agreement is unconscionable. Plaintiff submits her own Declaration, ECF No. [20-1], in an attempt to rebut Defendant's evidence of the existence of a valid agreement to arbitrate. In particular, she states that this litigation is the first time she has seen the Solutions Agreement, and that she did not unequivocally accept the terms of employment with Defendant

7

because she did not have a meaningful opportunity to review the Agreement, which was stored in a separate online location. *Id.* ¶¶ 4-6. Moreover, Plaintiff's Declaration states, "[w]ere I to have *read* the agreement by the Defendant placing the arbitration agreement in front of me, I would not have accepted employment with the Defendant." *Id.* ¶ 6 (emphasis added).

This record evidence supports a finding that the parties formed a valid arbitration agreement. Of note, Defendant's evidence demonstrates that Plaintiff was repeatedly presented with the opportunity to review the Solutions Agreement, that she was explicitly informed that her employment was contingent upon her acceptance of the Agreement, and that she accepted the terms of her employment and commenced working for Defendant. *See* ECF No. [6-3] (instructions to review the policies on Defendant's New Hire Website before accepting them and Plaintiff's acknowledgement of her completion of the forms required in the E-mail Offer); ECF No. [6-4] (Offer Letter "is made expressly contingent upon your . . . agreement to be bound by Solutions"); ECF No. [6-8] (offer acceptance form acknowledging receipt of the Solutions Agreement and agreeing to abide by the Agreement, which contains Plaintiff's electronic signature, her PIN, and the date of acceptance). This sufficiently establishes, by a preponderance of the evidence, that the parties agreed to arbitration.

Furthermore, aside from the bare-bones denials in her Declaration, Plaintiff fails to address any of the documentation that Defendant submits to demonstrate her acceptance of the Solutions Agreement. Plaintiff does she contest that she acknowledged and accepted other required portions of her Offer Letter during her onboarding. Likewise, Plaintiff makes no mention of her additional acknowledgement in her response to the E-mail Offer that she "completed all the forms indicated in the [E-mail Offer]," ECF No. [6-3] at 2,[2] which included the Solutions Agreement

---

[2] Notably, Plaintiff's Declaration seems to assert that the 48-hour time limit to accept Defendant's offer of employment precluded her from reviewing the Solutions Agreement. *See* ECF No. [20-1] ¶ 6 ("Defendant

acknowledgement form, ECF Nos. [6-4] & [6-3] at 2-3. Further, Plaintiff's Response does not deny that she received the Offer Letter, nor does she address the explicit language of the Offer Letter that makes the offer of employment contingent upon the acceptance of the Solutions Agreement. Plaintiff further disregards Defendant's position that the Solutions Agreement became valid and binding when Plaintiff began her employment, which was premised on her assent to the Agreement. Plaintiff's conclusory denial that she ever saw or read the Solutions Agreement fails to create any genuine dispute of fact on the issue of her assent to the Agreement. *See, e.g.*, *Valencia*, 2017 WL 7733158, at *3 ("Without any evidentiary support, Plaintiff's conclusory statement that he did not sign the arbitration agreement provided by Defendants, is insufficient to defeat a finding that an arbitration agreement was formed.").

Indeed, Plaintiff's Declaration appears to admit that she simply failed to read the Solutions Agreement, not that she did not electronically sign or accept the forms, including the Solutions Agreement acknowledgement form, necessary to begin her employment with Defendant. *See* ECF No. [20-1] ¶ 6. Yet, it is well established that a party cannot succeed in invalidating an agreement based solely on the claim that she did not *read* the agreement because, under Florida law, "a person is deemed to have read a contract that they have signed." *Sultanem v. Bright House Networks, LLC*, No. 8:12-cv-1739-T-24TBM, 2012 WL 4711963, at *2 (M.D. Fla. Oct. 3, 2012). "Unless one can show facts and circumstances to demonstrate that he was prevented from reading the contract, or that he was induced by statements of the other party to refrain from reading the

---

was pressuring me to execute [the Agreement] within 48 hours while I was busy transitioning out of my prior employment."). However, the E-mail Offer was sent on May 24, 2019, at 2:29 p.m., and it indicated that, upon her acceptance of the offer within 48 hours, Plaintiff would begin her employment with Defendant on June 17, 2019. ECF No. [6-3] at 2. Moreover, Plaintiff's response to the E-mail Offer, which indicated her completion of the required forms, was sent on May 25, 2019, at 7:35 p.m. *Id.* This timeline rebuts any contention that Plaintiff was unable to read the Solutions Agreement due to Defendant's time constraints.

contract, it is binding." *Kendall Imports, LLC v. Diaz*, 215 So. 3d 95, 100 (Fla. 3d DCA 2017) (citing *Spring Lake NC, LLC. v. Holloway*, 110 So. 3d 916, 917 (Fla. 2d DCA 2013)). Plaintiff presents no facts or circumstances to indicate that she was prevented from reading the Solutions Agreement, and does not dispute the fact that the Agreement was readily available to her during her onboarding process. *See Valencia*, 2017 WL 7733158, at *3 (concluding that the arbitration agreement was valid because "nothing in the record [] suggest[ed] that Plaintiff was coerced or that he was not given an opportunity to understand the contents of what he was signing").

Likewise, as explained above, Plaintiff's signed offer acceptance form specifically acknowledged that she received and reviewed the Solutions Agreement and agreed to be bound by its terms. *See* ECF No. [6-8]; *see also Herrera Cedano v. Morgan Stanley Smith Barney, LLC*, 154 F. Supp. 3d 1318, 1325-26 (S.D. Fla. 2016) ("Plaintiff's argument that he did not receive the [Arbitration] Agreement, on its own, is not relevant to this Court's consideration in determining whether the Agreement is enforceable under the FAA."). To the extent that Plaintiff attempts to argue unconscionability through the one sentence she includes on the issue in her Response, the Court finds that this attempt to invalidate the Agreement falls woefully short of what is required to successfully oppose arbitration. *See Green Tree Fin. Corp.-Ala.*, 531 U.S. at 92 ("When faced with a facially valid arbitration agreement, the burden is on the party opposing arbitration to demonstrate that the agreement is invalid[.]").

Further, by beginning her employment with Defendant after receiving the various notices regarding the Solutions Agreement, Plaintiff indicated her assent to the binding arbitration agreement upon which her employment offer was expressly contingent. *Grant v. Morgan Stanley Smith Barney LLC*, No. 16-81924-CIV, 2017 WL 1044484, at *3 (S.D. Fla. Mar. 20, 2017) (acceptance of an arbitration agreement may be done by performance, which includes continued

employment); *see also Prime Ins. Syndicate,* 363 F.3d at 1092. The Solutions Agreement became binding once Plaintiff commenced her employment because "Florida law permits the offeror to specify the terms and manner of acceptance," *Grant*, 2017 WL 1044484, at *3, and Defendant made acceptance of the employment offer expressly contingent on Plaintiff's agreement to be bound by the Solutions Agreement, ECF No. [6-4]. Thus, in light of the discussion above, the Court concludes that the parties have a valid arbitration agreement here.

### B. Arbitrability

Having determined that a valid agreement to arbitrate exists, the Court turns to the application of the delegation provision and the question of whether arbitrable issues exist. *See Seminole Cty. Tax Collector*, 2019 WL 1901019, at *9. *Hilton v. Fluent, LLC*, 297 F. Supp. 3d 1337, 1341 (S.D. Fla. 2018). In this case, the Solutions Agreement states that "[t]he Arbitrator, and not any court or agency, shall have exclusive authority to resolve any dispute relating to the applicability, interpretation, formation or enforceability of this Agreement including, but not limited to, any claim that the entirety or any part of this Agreement is voidable or void." ECF No. [6-7] at 23.

> The United States Supreme Court has explained that,
>
> [j]ust as the arbitrability of the merits of a dispute depends upon whether the parties agreed to arbitrate that dispute, *see, e.g.*, *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 57 (1995); *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985), so the question "who has the primary power to decide arbitrability" turns upon what the parties agreed about *that* matter. Did the parties agree to submit the arbitrability question itself to arbitration? If so, then the court's standard for reviewing the arbitrator's decision about *that* matter should not differ from the standard courts apply when they review any other matter that parties have agreed to arbitrate. *See AT&T Technologies, Inc. v. Communications Workers*, 475 U.S. 643, 649 (1986) (parties may agree to arbitrate arbitrability); *Steelworkers v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 583 n.7 (1960) (same).

*First Options of Chi., Inc.*, 514 U.S. at 943.

"When the parties' contract delegates the arbitrability question to an arbitrator, the courts must respect the parties' decision as embodied in the contract." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 528 (2019). "The question of whether the parties have agreed to allow arbitrators to decide the issue of arbitrability is essentially a question of contract law in which federal courts apply ordinary state-law contract principles," in order to give effect to the parties' intent. *Brandon, Jones, Sandall, Zeide, Kohn, Chalal & Musso, P.A. v. MedPartners, Inc.*, 203 F.R.D. 677, 683 (S.D. Fla. 2001) (citing *Scott v. Prudential Secs., Inc.*, 141 F.3d 1007, 1011 (11th Cir. 1998)).

Nevertheless, "[c]ourts should not assume that the parties agreed to arbitrate arbitrability unless there is 'clear and unmistakable' evidence that they did so." *First Options of Chi., Inc.*, 514 U.S. at 944 (alterations omitted) (quoting *AT&T Techs., Inc.*, 475 U.S. at 649); *see also JPay, Inc. v. Kobel*, 904 F.3d 923, 939 (11th Cir. 2018), *cert. denied*, 139 S. Ct. 1545 (2019). Rather, such a gateway question "is simply an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce, and the FAA operates on this additional arbitration agreement just as it does on any other." *Rent-A-Ctr., W., Inc.*, 561 U.S. at 69. "When parties clearly and unmistakably defer the issue of arbitrability to the arbitrator, however, the court should compel arbitration without assessing the arbitration agreement's validity or scope." *Steffanie A. v. Gold Club Tampa, Inc.*, No. 8:19-cv-3097-T-33TGW, 2020 WL 588284, at *2 (M.D. Fla. Feb. 6, 2020) (citing *Terminix Int'l Co. v. Palmer Ranch Ltd. P'ship*, 432 F.3d 1327, 1332-33 (11th Cir. 2005)).

Here, the language of the Solutions Agreement dictates that any disputes Plaintiff has as to the purported unenforceability or unconscionability of the Agreement should be presented to the arbitrator. The Solutions Agreement grants the arbitrator the exclusive power to resolve "any dispute relating to the applicability, interpretation, formation or enforceability of this Agreement

12

including, but not limited to, any claim that the entirety or any part of this Agreement is voidable or void." ECF No. [6-7] at 23. This contractual language clearly evinces the parties' intent to have the arbitrator decide issues concerning the existence, scope, arbitrability, or validity of the Solutions Agreement.³ Thus, any remaining disputes regarding the Solutions Agreement must be submitted to the arbitrator.

### C. Stay or Dismissal

Finally, Defendant asks the Court to dismiss or stay these proceedings, and Plaintiff asks the Court to stay the proceedings pending arbitration. The dispute is arbitrable pursuant to § 3 of the FAA. *See* 9 U.S.C. § 3. A stay is appropriate here because the Eleventh Circuit has explained that, "when a dispute is arbitrable, entry of a § 3 stay is mandatory." *Advanced Bodycare Sols., LLC v. Thione Int'l, Inc.*, 524 F.3d 1235, 1238 (11th Cir. 2008) (citation omitted). Based on the discussion above, the Court concludes that Plaintiff's claims are covered by the Solutions Agreement, and Plaintiff's concerns regarding the validity of the agreement are to be determined by the arbitrator. ECF No. [6-7] at 6, 23. Thus, Defendant's Motion is granted, and this case shall be stayed pending the completion of arbitration.

### IV. CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

---

³ Indeed, the Eleventh Circuit has found:

> that comparable language expressed a clear and unmistakable intent to delegate questions of arbitrability in general. *E.g.*, *Jones v. Waffle House, Inc.*, 866 F.3d 1257, 1267 (11th Cir. 2017) (interpreting a contract stating that "the Arbitrator . . . shall have authority to resolve any dispute relating to the interpretation, applicability, enforceability or formation of this Agreement"); *Martinez v. Carnival Corp.*, 744 F.3d 1240, 1245-46 (11th Cir. 2014) (interpreting a delegation of "any and all disputes arising out of or in connection with this Agreement, including any question regarding its existence, validity, or termination").

*JPay, Inc.*, 904 F.3d at 939.

1. Defendant's Motion, **ECF No. [6]**, is **GRANTED**.

2. The Clerk of Court is directed to **STAY** this case pending arbitration. This case shall remain **CLOSED** for administrative purposes only, and without prejudice to the parties to move to reopen once the arbitration has been completed.

3. To the extent not otherwise disposed of, all scheduled hearings in this case are **CANCELED,** any pending motions are **DENIED AS MOOT**, and all pending deadlines are **TERMINATED**.

**DONE AND ORDERED** in Chambers at Miami, Florida, on November 10, 2020.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record